No. 05-669

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 318

_____

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

TYLAR J. COONEY,

       Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and for the County of Missoula, Cause No. DC 04-403,
                  The Honorable John W. Larson, Presiding Judge.

COUNSEL OF RECORD:

       For Appellant:

              Darrel L. Moss, Sullivan, Tabaracci & Rhoades, P.C., Missoula, Montana

       For Respondent:

              Hon. Mike McGrath, Attorney General; Joslyn Hunt, Assistant Attorney General, Helena, Montana

              Fred Van Valkenburg, County Attorney; Jennifer Clark, Deputy County Attorney, Missoula, Montana

_____

                  Submitted on Briefs:  September 26, 2006

                       Decided:  December 5, 2006

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Tylar J. Cooney (Cooney) appeals from an order of the Fourth Judicial District Court, Missoula County, denying his pre-trial motion to suppress evidence discovered during a search of his person.

¶2     We review the following issue on appeal:

¶3     Was the District Court correct when it denied Cooney's motion to suppress?

**FACTUAL AND PROCEDURAL HISTORY**

¶4     Missoula County Sheriff Detectives Scott Brodie (Officer Brodie) and Tom Lewis (Officer Lewis) were assisting in the execution of a search warrant at a Missoula residence on February 26, 2004.  Cooney arrived at the residence during the search and requested entry to retrieve his son, who was a guest at the residence.  Officer Brodie and Officer Lewis requested Cooney's identification before granting him entry.  The officers relayed Cooney's name to the police dispatcher for a "routine wants and warrants" check.  The dispatcher informed the officers that Cooney had an outstanding warrant for his arrest because he had failed to appear in court for a traffic offense.

¶5     Officer Brodie and Officer Lewis handcuffed Cooney, placed him under arrest, and conducted a pat-down search of Cooney's person.  During the search the officers discovered a pipe and a small bag of marijuana.  Officer Brodie requested a Patrol Officer to transport Cooney to the municipal court so that Cooney could appear for the outstanding warrant and for the new charges for misdemeanor possession of marijuana and paraphernalia.  Officer Brodie and Officer Lewis then transferred custody of Cooney to Patrol Officer Paul Kelly (Officer Kelly) for transport, advising him that their initial

2

search of Cooney's person had not been "thorough."

¶6 Officer Kelly "patted down" Cooney before transport to ensure that Cooney had no hidden weapons. Officer Kelly felt an object in the right front pocket of Cooney's pants that he thought might be a weapon. Officer Kelly removed the object from Cooney's pants, discovering that it was a small, residue-covered pipe, wrapped in tissue paper. Officer Kelly recognized the pipe as the type often used to ingest methamphetamine. Laboratory tests later confirmed that the residue was in fact methamphetamine.

¶7 The State charged Cooney, pursuant to § 45-9-102, MCA, with felony possession of methamphetamine. Cooney entered a plea of not guilty to the charge, and filed a motion to suppress the pipe that Officer Kelly had discovered on Cooney's person. Cooney argued that Officer Kelly had exceeded the scope of the search incident to Cooney's lawful arrest. The District Court denied Cooney's motion following a hearing.

¶8 The District Court found Cooney guilty of felony possession of dangerous drugs following a bench trial and ordered a pre-sentence investigation. The court sentenced Cooney to a three-year suspended sentence in Montana State Prison. Cooney appeals.

## STANDARD OF REVIEW

¶9 We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law is correct. *State v. DeWitt*, 2004 MT 317, ¶ 21, 324 Mont. 39, ¶ 21, 101 P.3d 277, ¶ 21. A district court's findings of fact are clearly erroneous if (1) they are not supported by substantial evidence; (2) the district court misapprehended the effect of

3

the evidence; or (3) the district court made a mistake.  *DeWitt*, ¶ 21.

## DISCUSSION

¶10    Cooney argues that the methamphetamine pipe represents the fruit of an unconstitutional search and seizure.  Cooney concedes the lawfulness of his arrest, but alleges that Officer Kelly's search exceeded the scope of a warrantless search incident to a lawful arrest.  Both the Fourth Amendment of the United States Constitution and Article II, Sections 10 and 11, of the Montana Constitution protect Montanans from unreasonable searches and seizures.  We limit our analysis in this case to Montana law, however, because the Montana Constitution affords citizens a greater right to privacy, and therefore, broader protection than the Fourth Amendment in cases involving searches of a person and seizures of his personal property.  *State v. Hardaway*, 2001 MT 252, ¶ 31, 307 Mont. 139, ¶ 31, 36 P.3d 900, ¶ 31.

¶11    Warrantless searches are *per se* unreasonable under Montana law.  *Hardaway*, ¶ 36.  A warrantless search may be excused, however, if it falls into one of the "few carefully drawn exceptions to the warrant requirement recognized under Montana's unique constitutional language."  *Hardaway*, ¶ 36.  This Court recognizes searches conducted pursuant to a lawful arrest as one of the exceptions to the warrant requirement.  *Hardaway*, ¶ 36.  Section 46-5-102, MCA, codifies the scope of a warrantless search incident to arrest.  This section provides that "[w]hen a lawful arrest is effected, a peace officer may reasonably search the person arrested . . . for the purpose of: (1) protecting the officer from attack; (2) preventing the person from escaping; (3) discovering and seizing the fruits of the crime; or (4) discovering and seizing any persons, instruments,

4

articles, or things which may have been used in the commission of or which may constitute evidence of the offense."  Section 46-5-102, MCA.

¶12   Cooney argues that the State failed to justify Officer Kelly's warrantless search with exigent circumstances.  Cooney argues that Officer Kelly did not have a reasonable belief that Cooney was armed and dangerous.  Cooney insists that Officer Brodie and Officer Lewis already had satisfied themselves that Cooney had no weapons with which he could harm them.  Cooney asserts that Officer Kelly searched Cooney in order to "re-satisfy" himself that Cooney had no weapons, and thus the search cannot be considered "exigent."

¶13   We agree with the District Court that Cooney's attempt to impose an "exigent circumstances" requirement on Officer Kelly's search is misplaced.  We have held previously that Montana law requires no separate showing of exigent circumstances when an officer conducts a search incident to a lawful arrest in order to serve the purposes enumerated in § 46-5-102(1) through (3), MCA.  *Hardaway*, ¶ 57.  We require a separate showing of "specific and articulable exigent circumstances" only where the State seeks to rely on § 46-5-102(4), MCA.  *Hardaway*, ¶ 57.

¶14   The State relies on § 46-5-102(1), MCA, to justify Officer Kelly's search of Cooney.  Accordingly, the State must demonstrate that Officer Kelly's search incident to Cooney's arrest was commensurate with the purpose of preventing Cooney from using any weapons hidden on his person to attack Officer Kelly.  Section 46-5-102(1), MCA; *Hardaway*, ¶ 40.

5

¶15 Officer Brodie's and Officer Lewis's testimony indicates that their initial search of Cooney outside the residence was sufficient only to ensure safety in what was a relatively secure situation. Several other officers involved with the search of the residence were available to respond to any attempt by Cooney to use a hidden weapon when Officer Brodie and Officer Lewis searched Cooney. Cooney admits that he "was handcuffed and surrounded by no less than four law enforcement officials, and had no means of escape" when Officers Brodie and Lewis searched him.

¶16 Officer Kelly did not act on his own initiative. Officer Brodie advised Officer Kelly that he should perform a more thorough search before placing Cooney in the back seat of his police cruiser. Officer Brodie and Officer Lewis testified that they did not believe that their initial search of Cooney outside the residence was thorough enough to ensure that Cooney would be secured in the back seat of a police cruiser. Officer Kelly would be alone with Cooney in this less controlled environment where Cooney might have a greater opportunity to retrieve a hidden weapon.

¶17 We agree with the District Court that under these circumstances Officer Kelly's search was commensurate with preventing Cooney from retrieving any hidden weapons that he may have had on his person. *Hardaway*, ¶ 40. We do not read § 46-5-102(1), MCA, to require a police officer to trust his personal safety to a perfunctory search performed by other officers when those same officers have advised him that their initial search was insufficient to ensure the safe transport of a prisoner. The court in *United States v. Dyson*, 277 A.2d 658 (D.C. App. 1971), noted that "[t]he transporting officer has just as much right to protect himself by a search as the arresting officer has to protect

himself, particularly when the transporting officer was not present at the time of the arrest to observe the extent of the search for weapons." *Dyson*, 277 A.2d at 659. We agree.

¶18 Cooney argues that if we allow each officer who handles a prisoner to "re-satisfy" himself that no potential exists for injury or escape then the prisoner will be subjected to "numerous, continued, and repeated warrantless searches in violation of Montana law." We need not address this question here as the record shows that Officer Kelly did not "re-satisfy" himself that Cooney presented no potential for injury or escape. Officer Brodie and Officer Kelly testified that their initial search of Cooney was insufficient to ensure that Cooney was safe to transport. Officer Kelly conducted a more thorough search of Cooney in order to ensure—for the first time—that Cooney could be transported safely.

¶19 Cooney argues finally that Officer Kelly reasonably could not have assumed that the tissue-wrapped pipe was a weapon. The District Court found credible Officer Kelly's testimony that he felt what he believed was a small pocket knife in Cooney's right front pocket when he patted down Cooney. Cooney cites no support in the record for his assertion that "the item located in Defendant's pocket was wrapped in . . . so much tissue that it would have been impossible for any person to immediately determine" that the object posed a threat to officers. Thus, Officer Kelly's testimony presents substantial evidence for the court to find that Officer Kelly reasonably believed that the object in Cooney's pocket might have been a weapon. *Dewitt*, ¶ 21.

¶20 Affirmed.

/S/ BRIAN MORRIS

7

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE